UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**EMILIO LIRA,**

      **Plaintiff,**

**v.**                                                                         **Case No. SA-20-CV-00007-JKP**

**EDWARD JONES INVESTMENTS**
**a/k/a EDWARD D. JONES & CO., L.P.,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

      This matter is before the Court upon *Defendant's Motion for Summary Judgment* (ECF No. 32). Plaintiff filed an opposition to said motion, and Defendant filed a reply thereto. (ECF Nos. 36, 40). Also pending before the Court is *Defendant's Partial Motion to Strike and Objections to the Declaration of Emilio Lira and Exhibit R to Plaintiff's Opposition to Defendant's Motion for Summary Judgment* (ECF No. 39). Plaintiff responded and Defendant replied. (ECF Nos. 41, 42). After careful consideration of the arguments and evidence of the parties, the Court denies as moot Defendant's partial motion to strike and objections and grants Defendant's motion for summary judgment.

**I. Background**

      In this employment discrimination action, Plaintiff Emilio Lira ("Lira") brings a cause of action for retaliation against his former employer, Defendant Edward Jones Investments a/k/a Edward D. Jones & Co., L.P. ("Edward Jones"). In his Complaint, Lira alleges Edward Jones violated Title VII of the Civil Rights Act when it retaliated against him by terminating his employment after he made an internal complaint of racial discrimination, filed a lawsuit alleging violations of Title VII,

and opposed Edward Jones' efforts to dispose of the case prior to trial. ECF No. 11. Edward Jones moves for summary judgment contending Lira failed to establish a prima facie case of retaliation because there is no causal connection between a protected activity and termination of his employment, and it terminated Lira's employment for legitimate, nonretaliatory, and non-pretextual reasons. ECF No. 32 at 4.

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1] A dispute is "genuine" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249. A dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Id*. 477 U.S. at 248. While all evidence and reasonable inferences are viewed in the light most favorable to the nonmovant, and all disputed facts are resolved in favor of the nonmovant, the judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

The moving party has the burden to "demonstrate the absence of a genuine issue of material

---

[1] Effective December 1, 2010, the summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and there was one word change from previous versions—"genuine issue" became "genuine dispute," but the standard for granting summary judgment remains unchanged. Fed. R. Civ. P. 56. Notes of Advisory Committee on 2010 amendments. Accordingly, this Court uses the term "dispute" noting, however, much of the caselaw uses "genuine dispute" and "genuine issue" interchangeably.

fact and the appropriateness of judgment as a matter of law" to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982). Once the moving party has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 (stating that "a scintilla of evidence" is insufficient). Rather, the nonmoving party must identify specific facts that show a genuine dispute for trial. *Matsushita*, 475 U.S. at 587. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A district court's decision on summary judgment is largely controlled by what the parties presented. If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that evidence as opposed to having to engage in an extensive search." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations omitted).

### III. Edward Jones' Motion to Strike and Objections to Summary Judgment Evidence

Edward Jones' *Partial Motion to Strike and Objections to the Declaration of Emilio Lira and Exhibit R to Plaintiff's Opposition to Defendant's Motion for Summary Judgment* (ECF No. 39) is based on the parties' agreement to limit discovery to the issues surrounding Edward Jones' termination of Lira's employment. *See* ECF No. 15 ¶ 5(B).[2] Edward Jones contends Lira's evidence

---

[2] The agreement states:

> The parties intend to conduct discovery on (1) the facts and circumstances directly related to the termination of Plaintiff's employment as a financial advisor with Edward Jones, and the reasons for Edward Jones terminating his employment; (2) Plaintiff's efforts to secure employment following the termination of his employment with Edward Jones; (3) Plaintiff's employment history and income

is outside the scope of the parties' agreement or stipulation regarding the relevant issues that are in dispute in this case. Specifically, Edward Jones objects to paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 15, 19, and 20 of Lira's declaration and exhibits R, V, W, and X to Lira's response to Edward Jones' motion for summary judgment. ECF No. 39 at 4-10.

Edward Jones contends these matters should be excluded from the Court's consideration because they relate to facts Lira used to support a prior lawsuit against Edward Jones, and the parties agreed to exclude "matters related to" the allegations of discrimination made in the prior lawsuit.[3] Although the Court agrees much of the evidence Edward Jones seeks to exclude relates to the 2016 lawsuit, both parties have presented information describing Lira's tenure with Edward Jones and the facts related to Lira's prior lawsuit. *See, e.g.,* "Defendant's Factual Background in Support of its Motion for Summary Judgment," ECF No. 32-1.

Edward Jones also objects that certain statements in Plaintiff's declaration lack personal knowledge, are conclusory, irrelevant, and constitute hearsay. The allegedly objectionable evidence is not necessary to the disposition of the pending motion and will not be considered in determining whether genuine disputes of material fact exist regarding the core issue in this case. Therefore, Edward Jones' objections are denied as moot. *See Continental Cas. Co. v. St. Paul Fire Marine Ins. Co.*, No. 3-04-CV-1866-D, 2006 WL 984690 at *1 n.6 (N.D. Tex. Apr. 14, 2006) (overruling as moot

---

following the termination of his employment with Edward Jones; and (4) the Edward Jones policies Plaintiff violated before his employment with Edward Jones was terminated. Discovery should be completed on or before January 24, 2021, as contemplated in the parties' Joint Proposed Scheduling Recommendations. There is no reason for discovery to be conducted in phases.

ECF No. 15 ¶ 5(B)

[3] "The parties agree that discovery in this case will be limited to the issues outlined in 5(B) above and will exclude any matters related to Plaintiff's allegations of discrimination underlying *Lira v. Edward Jones*, 16-CV-1028-DE." ECF No. 15 ¶ 5(E).

objections to evidence not considered by the court in deciding motion for summary judgment).

## IV. Discussion

### A. Undisputed Facts

Lira was hired by Edward Jones as a financial advisor in 2005. ECF Nos. 11 at 2; 36 at 2. In November 2014, Lira made an internal complaint of discrimination alleging he was not considered for assignment to the Uvalde Field Office of Edward Jones based on his race and ethnicity. ECF No. 11 at 2. Lira is Hispanic/Latino. *Id*. Lira complained that vacancies in Edward Jones' more lucrative offices were filled by Caucasian or white financial advisors to the exclusion of nonwhite financial advisors. *Id*. at 3. Lira filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on February 8, 2016. And on October 14, 2016 ("2016 case"), he filed a lawsuit against Edward Jones, in which he brought claims of discrimination based on the facts described above. *Id*. at 3.

Edward Jones filed a motion for summary judgment in the 2016 case to which Lira responded. *Id*. On March 12, 2019, the Honorable David A. Ezra entered an Order granting Edward Jones' motion for summary judgment and directing the Clerk's Office to enter judgment in favor of Edward Jones and close the case. *Id*.; *see also* SA-16-CV-1028-DAE, ECF Nos. 86, 87. The Court taxed costs of the lawsuit against Lira. SA-16-CV-1028-DAE, ECF Nos. 88, 89. Edward Jones filed notice of satisfaction on July 2, 2019. *Id.*, ECF No. 90.

### 1. The Financial Industry Regulatory Authority ("FINRA") Reporting Requirements and Edward Jones Reportable Events System

The Financial Industry Regulatory Authority ("FINRA") is an independent, congressionally authorized nongovernmental entity that promulgates and enforces rules which govern registered

brokers and broker-dealer firms such as Edward Jones.[4] ECF Nos. 32-1 at 1; 32-4 at 2. Financial advisors are required to report unsatisfied money judgments on Form U4. *See* ECF Nos. 32-5 at 15; 32-6 at 2. *See also* FINRA, Form U4 and U5 Interpretive Questions and Answers 11 (2012), https://www.finra.org/sites/default/files/Interpretive-Guidance-final-03.05.15.pdf.

Specifically, question 14M of Form U4 asks, "Do you have any unsatisfied judgments or liens against you?" ECF No. 32-5 at 15. FINRA by-laws generally require registered persons to update their Form U4 information every time a change in status occurs. For example, Form U4 must be updated when a judgment is entered and again when the judgment is satisfied. To avoid penalty, disclosure of a judgment must be made within thirty days of the "date [the] registered person learned of [the] judgment/lien." ECF No. 32-7 at 2, 4 (stating that any late-filed change to questions 14A through 14M on Form U4 is "subject to the late disclosure fee"). *See also* Form U4 and U5 Interpretive Questions and Answers 12 (stating that the obligation to amend Form U4 "arises on the date the registered person receives notice or learns [of the] unsatisfied judgment or lien; therefore, . . . the judgment or lien [must be reported] no later than 30 days from that date." And further, "the reporting obligation exists even if the registered person satisfies the judgment or lien in the interim period prior to the 30-day deadline.").

Lira testified he received training regarding FINRA reportable events and Edward Jones' reportable events policies. ECF No. 32-3, Lira Dep. 74:1-4. Lira stated he was familiar with the Edward Jones reportable events policies and these policies required him to disclose judgments by the end of the next business day after the event occurred. *Id*. 72:15-24. Edward Jones' reportable events

---

[4] *See* Exhibit E, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, ECF No. 34-3 at 3 n.1-2. *See also* https://www.finra.org/about.

policy states "[a]ll associates must disclose the events listed below **by the end of the next business day after the event has occurred.**" ECF No. 32-24 at 2. The policy lists judgments, liens, levies, or warrants as reportable events and requires reporting of the initial judgment, lien, levy, or warrant, and upon the satisfaction thereof. *Id*.

Lira testified he understood that the purpose of Edward Jones' reportable events policy, including the internal deadline to disclose reportable events, was to allow Edward Jones time to assist financial advisors with complying with FINRA's reporting requirements. Lira Dep. 73:10-15. Lira periodically certified that he reviewed the Edward Jones reportable events policies. *Id*. 74:20-24. Lira testified he signed an employment agreement in which he agreed to notify Edward Jones in a prompt manner of any litigation he became involved in, or judgments entered against him. *Id*. 75:6-12. Lira confirmed his employment agreement required him to cooperate with any investigations conducted by the compliance or field supervision departments. *Id*. 18-24.

Lira admitted he failed to comply with FINRA reporting requirements in 2015, Edward Jones was assessed the maximum late filing fee of $1,575.00, and he was ultimately responsible for paying the fee when the firm passed the cost along to him. *Id*. 81:3-12. In addition to paying the fee, Lira was required to complete a training module regarding his disclosure obligations. *Id*. 85:7-25; 92:8-94:3; ECF No. 34-3 at 4. Lira also admitted he was required to disclose a reportable event even if Edward Jones had knowledge of the event. *Id*. 120:1-7. Lira agreed he again did not comply with Edward Jones' reportable events policy when he did not disclose the 2019 judgment. *Id*. 121:13-18.

**2. Events Leading to Lira's Termination**

As described above, FINRA required Lira to update his Form U4 to disclose the March 12, 2019 judgment against him within thirty days of receiving notice or learning of the judgment. And Edward Jones required that Lira disclose the judgment to Edward Jones' Reportable Events

Department by no later than "the end of the next business day after the event has occurred." ECF No. 32-24 at 2.

On April 29, 2019, Leigh Drnec, an Edward Jones Compliance Resolution-Reportable Events Senior Paralegal, contacted Lira to inform him the company learned of the 2019 judgment entered against him. ECF No. 32-38 at 2. In her email to Lira, Ms. Drnec stated, "[o]ur records indicate that you have not reported the judgment to Reportable Events as required by Firm policy." *Id*. She asked Lira to "please report the judgment by the close of business tomorrow." *Id*.

Because he did not take Ms. Drnec's email seriously, ECF No. 32-16, TWC Tr. 15:13-15; 17:7-9,[5] Lira did not timely respond, Lira Dep. 149:18-20. On May 7, 2019, Ms. Drnec sent Lira a second email informing him of his failure to respond to her April 29 email, reminding him of his obligation to update his Form U4, and directing him to report the judgment by the end of the day. ECF No. 32-38 at 2. Lira reported the judgment the next day, May 8, 2019. ECF No. 32-39.

After receiving notice that Lira completed and submitted Edward Jones' reporting form, Ms. Drnec emailed Lira again, asking, "Why are you now just reporting this event? You were already issued an LOE for unreported events in 2015. Your amended U4 reflecting this judgment is due to FINRA Friday. I will be forwarding to you a draft U4 before then." ECF No. 32-40 at 3. Lira responded to Ms. Drnec with the following message:

> Leigh,
>
> I am upset and in disbelief that the judgment even occurred. Because I am human, [it] has taken me a while to come to terms with it. I will be more than happy to explain myself to FINRA for my lack of timely reporting. Maybe FINRA can chime in on the firms discriminatory and fraudulent behavior after my explanation.
>
> I don't feel safe in this firm when we behave like a white supremacist or a colluder of white supremacist would as it relates to our on-boarding of Financial Advisors

---

[5] Texas Workforce Commission, Case 2141902, Transcript of Telephonic Hearing, Oct. 3, 2019.

into these massive offices in an unsafe, hidden and illegally discriminatory manor [sic]. This behavior delegitimizes us as an organization in many ways.

I don't feel safe is the short answer and I know [too] much about how we operate. I had a chance to look at all the evidence as my own Pro Se Attorney. [It is too] bad for me and the firm, I could not get my day in court with a jury of my peers.

Forgive me if I seem rude. I am not upset with you. My anger is really with the firm policy I call the Validation Of Illegal Discrimination (VOID) Rule. This policy is a real sticker if you are Hispanic with a Hispanic surname or born black. I unfortunately do not know how  to collude or cowar [sic] down from it.

I can extrapolate on this if you like. Give me a call.

*Id*.

Phil Toben, senior compliance counsel and leader of the group responsible for FINRA filings, determined Lira's email rose to the level of unprofessional conduct and referred the issue to Associate Relations. ECF No. 32-8, Toben Dep. 6:3-15; 64:7-12. Steve Rarick, Department Leader for Associate Relations, decided to terminate Lira because he determined Lira's response to Ms. Drnec's routine compliance inquiry was inappropriate and unprofessional. *Id*. 63:24-64:4; 97:20-98-4.

On May 13, 2019, Rarick and Toben spoke with Lira regarding the May 8, 2019 email to Drnec. ECF No. 32-41 at 2-3. Lira apologized and admitted his message to Drnec was rude. *Id*. Rarick informed Lira that he was being terminated effective immediately due to his unprofessional conduct. *Id*. *See also* Lira Dep. 178:1-11; 182:6-11.

On May 22, 2019, Rarick and Toben had another phone call with Lira, in which Toben confirmed that "Form U5" would include "Inappropriate Conduct." ECF No. 32-41 at 2. Rarick explained that Lira had been terminated for failure to provide timely responses to compliance inquiries and unprofessional conduct. Lira Dep. 182:6-19. The Form U5 states Lira was terminated on May 13, 2019, for "failure to provide timely responses to Compliance inquiries; unprofessional conduct. Not securities or client related." ECF No. 36-1 at 3.

**B. Motion for Summary Judgment**

**1. Defendant's Grounds for Summary Judgment**

Edward Jones moves for summary judgment on two grounds: (1) Lira cannot establish the causation element of his prima facie case of retaliation; and (2) Edward Jones terminated Lira's employment for legitimate and nonretaliatory reasons which were not pretextual.

**2. *McDonnell Douglas* framework**

The burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466 (5th Cir. 2021). Under McDonnell Douglas, the plaintiff must first establish the prima facie case for the claim alleged. *Texas Dept. of Community Affairs v.  Burdine*, 50 U.S. 248, 252–53 (1981). If the prima facie case is made, the defendant bears a burden of production to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). If the defendant meets this burden, the burden shifts back to the plaintiff who may prove discrimination or retaliation by offering evidence that the defendant's stated reason is pretextual. *Id.*

**3. Retaliation**

**a. Lira Fails to Make a Prima Facie Case of Retaliation**

A prima facie case of retaliation requires the plaintiff to establish (1) participation "in an activity protected by Title VII"; (2) "an adverse employment action" by the employer; and (3) "a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007); *accord Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). The third element of the prima facie case requires only that the plaintiff establish "a causal link between the protected activity and [the adverse

action]." *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021). This "burden of causation" can be met "simply by showing close enough timing between [the] protected activity and [the] adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (citing *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)).

If the plaintiff establishes his prima facie case, then the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). The employer's burden is one of production, not persuasion, and the court does not assess credibility. *Id*. If the employer satisfies its burden of production, then the plaintiff bears the ultimate burden of proving that the employer's stated reason is not true but is a pretext for its retaliatory purpose. *Id*. The burden of persuasion "remains at all times with the plaintiff." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). To satisfy his burden, the plaintiff must rebut each nonretaliatory reason articulated by the employer. *McCoy*, 492 F.3d at 557.

### i. Protected Activity

While Lira alleges five protected activities, four of the protected activities were presented in support of his claims in the 2016 case. As discussed above, these claims were adjudicated at summary judgment. Additionally, Lira engaged in the four referenced activities from November 13, 2014 through November 13, 2017,[6] each and all of which are—temporally—too far removed from his May 13, 2019 termination to establish a prima facie case of retaliation. And Lira has not

---

[6] *See* ECF No. 11 ¶ 16 (alleging five protected activities, to wit: (1) November 13, 2014 internal verbal complaint of discrimination; (2) February 8, 2016 charge of discrimination to the EEOC and Texas Workforce Commission; (3) 2016 lawsuit, filed on October 14, 2016; (4) November 13, 2017 deposition given in connection with Lira's 2016 lawsuit; (5) January 9, 2019 Plaintiff's *Response in Opposition to Defendant's Motion for Summary Judgment*, filed in the 2016 lawsuit).

presented facts or argument that permit the Court to consider a "continuing violations" theory in this context. *Heath v. Bd. of Supervisors for the S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 736-39 (5th Cir. 2017) (discussing the continuing violations doctrine in a Title VII context). Accordingly, the Court finds that Plaintiff's *Response in Opposition to Defendant's Motion for Summary Judgment* filed in the 2016 case on January 9, 2019, is the protected activity that is relevant in this case.

### ii. Protected Activity Not Alleged in Plaintiff's Complaint

In response to the pending motion for summary judgment, Lira contends his March 19, 2019 email to Edward Jones and his May 8, 2019 email to Drnec should be viewed as complaints of discrimination. ECF No. 36 at 16-17; ECF. No 34-1, Lira Decl. 5-6. Lira argues he was terminated in retaliation for engaging in protected activity based on the contents of these emails. *Id.* But Lira's response does not expand upon his amended complaint, adding facts to aid the Court's understanding. Rather, it alleges that separate events, neither alleged nor referred to in his complaint, provide the basis for his retaliation claim. Indeed, Lira specifically states in his amended complaint that "Defendant's action in terminating Plaintiff occurred four months after the last protected activity, i.e., filing a response in opposition to Defendant's Motion for Summary Judgment, [in the 2016 case] and less than two months following entry of the judgment of dismissal of Plaintiff's discrimination suit and the granting to Defendants of a judgment for costs." ECF No. 11 at 5.

Because Lira's March 19 and May 8, 2019 emails were not raised in the amended complaint, but raised only in response to the motion for summary judgment, these emails are not properly before the court as bases for Lira's retaliation claim. *See Cutera v. Bd. Of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint, but rather is raised only in response to a motion for summary judgment is not properly before the court.");

*Benavides v. EMC Mortg. Corp.*, No. 3-12-46, 2013 WL 416195, at *4 (S.D. Tex. Jan. 31, 2013) (finding that summary judgment in favor of the defendants was appropriate on a theory of recovery that was raised for the first time in plaintiffs' response to a motion for summary judgment because the new claim was not properly before the court); *U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 956 (S.D. Tex. 2007) (holding that a relator-plaintiff could not defeat summary judgment on his conspiracy claim by raising a new factual basis for the claim for the first time in his summary judgment response). *Cf. Wells v. Healthcare Fin. Servs.*, LLC, No. 2:13-CV-256-KS-MTP, 2014 WL 5339377, at *3 (S.D. Miss. Oct. 20, 2014), opinion withdrawn for other reasons on reconsideration, No. 2:13-CV-256-KS-MTP, 2014 WL 6474276 (S.D. Miss. Nov. 19, 2014) (allowing "new facts" in support of existing claims and observing that even if the court construed "the new facts as unpleaded claims, it would allow Plaintiff to amend" based on the court's Fed. R. Civ. P. 16 analysis) (citing *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 168 (5th Cir. 2010) (where defendant would have suffered little prejudice and amendment was important to plaintiff's case, amendment was appropriate); *Tex. Indigenous Council v. Simpkins*, 544 F. App'x 418, 421 (5th Cir. 2013) (where defendant would have suffered little prejudice and denying leave to amend would have determined outcome of case, good cause existed to permit amendment)).

One final point bears mentioning. The Court thoroughly reviewed the record and found no evidence that Edward Jones took any adverse action against Lira between the date judgment was entered (March 12, 2019) and his May 13, 2019 termination. There is also no evidence that Edward Jones took any adverse action against Lira for his failure to report the judgment. Edward Jones' policies required employees to internally report actions that triggered Form U4 updates and allowed the company to request reimbursement for any penalty assessed for late reporting. And, as discussed below, there is evidence that supports Edward Jones' nonretaliatory reasons for Lira's termination.

13

### iii. Knowledge and Timing

The Fifth Circuit has held that a plaintiff may make the causation element of a prima facie case "simply by showing close enough timing between [the] protected activity and [the] adverse employment action." *Brown*, 969 F.3d at 577. However, the Fifth Circuit has counseled that knowledge of the protected activity paired with timing is key to finding causation.  "A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). A plaintiff must "produce at least some evidence" the defendant "had knowledge of the protected activity" at the prima facie stage. *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 883, n.6 (5th Cir. 2003). "If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." *Id*. *See also Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (the company knew of the plaintiff's whistle blowing activities prior to firing him).

When an employee does not show the employer's knowledge of the protected activity, the Fifth Circuit has found causation only where the protected activity and the adverse employment action were in "very close" temporal proximity. *Besser v. Texas Gen. Land Office*, 834 F. App'x 876, 885 (5th Cir. 2020) (holding that "that two and one-half months between the protected activity and the adverse employment decision, standing alone, is not within the very close proximity that is necessary to establish causation"). *Cf. Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (temporal proximity of five days was sufficient to provide a "causal connection" that enabled the plaintiff "to satisfy the third prong of the prima facie case."). *See also Clark Cty. Sch. Dist. v.*

*Breeden*, 532 U.S. 268 273-274 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (concluding that a three-month period was insufficient).

Rarick stated he did not know Lira opposed Edward Jones' motion for summary judgment in January 2019 when he terminated him in May 2019. Rarick Decl. ¶ 9. Rarick testified that he determined the contents of Lira's May 8, 2019 email constituted grounds for termination. Rarick Dep. 100:15-23. Lira has not presented any evidence to rebut these facts. Instead, Lira argues temporal proximity alone (the four months between his last protected activity and his termination) is sufficient to create a causal link to establish a prima facie case. In line with Fifth Circuit precedent, this Court finds that Lira's failure to show that Rarick knew about Lira's protected activity dooms his prima facie case. The four months between the relevant protected activity (the January 2019 opposition to Edward Jones' summary judgment) and his termination date (May 13, 2019), standing alone, is insufficient to establish the causation element of Lira's prima facie case.

**b. Edward Jones' Reasons for Terminating Lira Are Nonretaliatory and Not Pretextual**

Even if the Court were to assume that Lira established a prima facie case of retaliation (which he has not), Edward Jones satisfied its burden by presenting evidence of legitimate, nonretaliatory reasons supporting Lira's termination. As recited above, Rarick terminated Lira on May 13, 2019. *See* ECF No. 32-41 at 2-3. The reasons given for Lira's termination were (1) his failure to timely respond to Ms. Drnec's request that he report the March 12, 2019 judgment against him; (2) his "inappropriate and unprofessional" response to Ms. Drnec's email. *See id.*; Lira Dep. 182:6-19; ECF No. 36-1 at 3.

Rarick testified, "if [Lira] had reported this information or responded in a timely manner and not responded inappropriately, I likely would not have been involved and he would not have been terminated." ECF No. 32-9, Rarick Dep. 99:3-6; 99:24-100:5. Rarick was aware of Lira's November

15

2014 internal complaint and his February 2016 charge of discrimination to the EEOC and the Texas Workforce Commission. *Id.* 133:8-18. Rarick was aware that Lira filed the 2016 lawsuit. *Id.* 113:23-114:1. Rarick stated he has terminated white financial advisors for using derogatory language. *Id.* 92:9-20. Rarick stated he did not know Lira testified in a deposition in the 2016 lawsuit when he decided to terminate him in May 2019. *See* ECF No. 32 at 13 (citing Rarick Decl. ¶ 8). Rarick also stated he did not know Lira opposed Edward Jones' motion for summary judgment in January 2019, when he terminated him in May 2019. *Id.* (citing ¶ 9). Rarick testified that he determined the contents of Lira's May 8, 2019 email constituted grounds for termination. Rarick Dep. 100:15-23.

As Edward Jones has met its burden, Lira must show a "conflict in substantial evidence" on the question of whether Edward Jones would not have terminated him but for his protected activity. *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 561-562.

The Court does not doubt that Lira genuinely believes Edward Jones retaliated against him for complaining about the company's practice of filling financial advisor vacancies. The Court also does not doubt Lira's genuine belief that nonwhite financial advisors were excluded from lucrative opportunities. Lira's genuine beliefs, no matter how sincere, are not competent summary judgment evidence and cannot create a genuine dispute of matter fact that Edward Jones' reasons for terminating him were pretextual. "A Plaintiff's subjective beliefs are not sufficient to create an issue of fact." *Salinas v. AT&T Corp.*, 314 Fed. App'x. 696, 699 (5th Cir. 2009); *see Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995); *Elliot v. Group Medical & Surgical Service*, 714 F.2d 556, 567 (5th Cir. 1983) (when the employee does not seriously dispute the objective truth of rational reasons articulated by the employer, pretext can not be established by a

subjective belief regarding what motivated the employer's action).

Here, the undisputed summary evidence shows that Lira failed to timely respond to a compliance inquiry and he responded to Drnec's email with unprofessional language. Edward Jones terminated Lira for those reasons. Rarick's deposition testimony, Edward Jones' call notes between Rarick and Lira, and the Form U5 verify the reasons for Lira's termination. Lira presents no competent summary judgment evidence in rebuttal. Therefore, Lira has not met his burden to establish pretext.

**V. Conclusion**

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 32). The Court **DENIES AS MOOT** Defendant's Partial Motion to Strike and Objections to the Declaration of Emilio Lira and Exhibit R to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (ECF No. 39). Plaintiff Emilio Lira takes nothing as to his claims against Edward Jones Investments a/k/a Edward Jones & Co., L.P. The Clerk **SHALL CLOSE** this case following entry of the Final Judgment issued contemporaneously herewith.

**It is so ORDERED this 2nd day of February 2022.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**